RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0356p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| *Plaintiff-Appellee,* | | |
| | | No. 07-5286 |
| *v.* | | |
| ADRIAN CONAN CURB, | | |
| *Defendant-Appellant.* | | |

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 04-00182—Thomas A. Varlan, District Judge.

Argued: October 21, 2010

Decided and Filed: November 18, 2010

Before: MARTIN, COLE, and CLAY, Circuit Judges.

_____

## COUNSEL

**ARGUED:** David E. Mills, THE MILLS LAW OFFICE LLC, Cleveland, Ohio, for Appellant. Debra A. Breneman, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee. **ON BRIEF:** David E. Mills, THE MILLS LAW OFFICE LLC, Cleveland, Ohio, for Appellant. Steven H. Cook, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee.

_____

## OPINION

_____

BOYCE F. MARTIN, JR., Circuit Judge. This is a sentencing appeal that reaches us somewhat stale. Defendant-appellant Adrian Conan Curb pleaded guilty on February 28, 2005 to two crack-cocaine charges. The district court enhanced Curb's total offense level for his status as a career offender, the application of which he now appeals. Additionally, Curb requests resentencing in light of the Supreme Court's

1

recognition of crack-to-powder cocaine sentencing disparities in *Kimbrough v. United States*, 552 U.S. 85 (2007), and *Spears v. United States*, 129 S. Ct. 840 (2009), both of which were issued after he was sentenced.  We **REVERSE** the judgment and **REMAND** for resentencing.

## I.  BACKGROUND

Curb was taken into custody on March 15, 1997 for possession of cocaine for resale, a violation of Tennessee state law.  Later, on April 7, he was again taken into custody for aggravated assault, another Tennessee violation.  Although he was seventeen years old at the time of both arrests, Tennessee charged him as an adult, and convicted him of both crimes in Anderson County Criminal Court in Clinton, Tennessee.  He was sentenced for both convictions on October 20.

On February 28, 2005, Curb pleaded guilty in United States District Court for the Eastern District of Tennessee to one count of distribution of crack-cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and one count of distribution of five grams or more of crack-cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B).  He was not sentenced until nearly two years later on February 16, 2007.  The Presentence Investigation Report used at Curb's sentencing hearing indicated that the career offender enhancement, U.S.S.G. § 4B1.1 (2006), should apply to his total offense level.  The Probation Office found that Curb qualified as a career criminal offender because he was at least eighteen years old when he committed the instant drug-related felonies, and he had been previously convicted of a drug-related crime and a crime of violence.

Curb objected to the career offender enhancement, arguing that his prior convictions were "related" pursuant to U.S.S.G. § 4A1.2 cmt. n.3, and, thus, should be considered a single prior offense.  The district court overruled Curb's objection, found that his two prior convictions were unrelated, and applied the career offender enhancement to his total offense level.  The court then calculated Curb's Criminal History Category and adopted the Report's advisory Guidelines sentencing range of twenty-one years and ten months to twenty-seven years and three months imprisonment.

The district court found further that Curb's cooperation with government agents was not sufficient to qualify him for a substantial assistance departure pursuant to U.S.S.G. § 5K1.1, but noted that Curb's cooperation would be taken into account in the district court's review of the history and characteristics of the defendant. After reviewing the applicable sentencing factors under 18 U.S.C. § 3553(a), the district court sentenced Curb to twenty-one years and ten months of incarceration to be followed by eight years of supervised release.

## II. DISCUSSION

### A.      The Career Offender Enhancement

The district court categorized Curb as a career offender pursuant to U.S.S.G. § 4B1.1, which imposes higher Guidelines offense levels for certain repeat offenders. For a defendant to qualify for the enhancement, a court must find:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). Curb argues that he did not satisfy the third prong of "two prior felony convictions." At first blush, Curb's argument might seem like a fool's errand. He has undeniably been convicted for one felony charge of aggravated assault and one felony charge of cocaine possession. These would seem to sufficiently satisfy the third prong. However, additional sections of the Guidelines inform us that whether Curb has "as least two prior felony convictions" actually depends on whether he has previously received separate *sentences*. The Guidelines do not make this conclusion readily apparent, nor does the facially unambiguous section 4B1.1(a) direct us to look at other sections for a deeper meaning. Nevertheless, whether Curb satisfied the third prong depends on whether he had multiple, prior, separate sentences. We will attempt to explain this rule.

For a defendant to qualify for the third prong of section 4B1.1(a), at least two of the sentences for the defendant's prior convictions must be "counted separately" pursuant to section 4A1.1(a), (b), or (c). U.S.S.G. § 4B1.2(c). These sections do not reference convictions at all. Instead they reference "prior sentence," which is defined by section 4A1.2(a). Furthermore, hidden among the comment notes of section 4B1.2, the Guidelines expressly make the definitions listed in section 4A1.2 applicable to section 4B1.1 for purposes of determining whether prior convictions are counted separately. U.S.S.G. § 4B1.2 cmt. n.3. Therefore, to determine whether Curb had qualifying prior convictions, we look to the definition of "prior sentence" in section 4A1.2(a).

Although we have made it this far through the Guidelines labyrinth, we are now faced with another quandary. At the time Curb was sentenced, an earlier definition of "prior sentence" from section 4A1.2(a)(1) was in effect that has since been amended by Amendment 709. U.S.S.G. app. C, amend. 709 (2007). Curb argues that he does not have multiple prior sentences based on the language of Amendment 709. For his argument to succeed, we would have to find that Amendment 709 is clarifying and, thus, retroactive for his sentence. If a Guidelines amendment is clarifying, it may be applied retroactively "to discern the Sentencing Commission's intent regarding the application of a pre-amendment Guideline." *United States v. Geerken*, 506 F.3d 461, 465 (6th Cir. 2007) (citing *United States v. DeCarlo*, 434 F.3d 447, 458-459 (6th Cir. 2006)). Several of our sister circuits have decided this issue and held that Amendment 709 is substantive rather than clarifying. *See United States v. Alexander*, 553 F.3d 591, 592-93 (7th Cir. 2009); *United States v. Marler*, 527 F.3d 847, 877 n.1 (9th Cir. 2008); *United States v. Wood*, 526 F.3d 82, 87-88 (3d Cir. 2008); *United States v. Godin*, 522 F.3d 133, 136 (1st Cir. 2008) (per curiam). Nevertheless, we need not decide whether Amendment 709 is clarifying or substantive if Curb would still qualify as a career offender even if Amendment 709 applied to his sentence.

Under the current language of section 4A1.2(a)(1), as revised by Amendment 709, "prior sentence" is defined as "any sentence previously imposed upon adjudication

of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense."  The Guideline elaborates further:

> If the defendant has multiple prior sentences, determine whether those sentences are counted separately or as a single sentence.  *Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest* (i.e., the defendant is arrested for the first offense prior to committing the second offense).  *If there is no intervening arrest, prior sentences are counted separately* unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day.  Count any prior sentence covered by (A) or (B) as a single sentence.

U.S.S.G. § 4A1.2(a)(2) (emphasis added).  The first question necessary to conclude whether Curb had multiple prior sentences, therefore, is whether he had an intervening arrest separating the offenses.  If he did, our analysis ends here.

The Guidelines do not provide a definition for "arrest."  Curb argues that we should rely upon Tennessee's definition of arrest, which precludes juveniles from being "arrested."  Tenn. Code Ann. § 37-1-113 (West 2010) ("A child may be taken into custody . . . [p]ursuant to the laws of arrest," but "[t]he taking of a child into custody is not an arrest, except for the purpose of determining its validity under the Constitution of Tennessee or the Constitution of the United States.").  However, unless Congress plainly instructs us otherwise, we will not look to state law in interpreting the federal Guidelines.  *United States v. Jackson*, 401 F.3d 747, 749 (6th Cir. 2005).

Curb also argues that changes to federal law require us to find that he could not have been arrested as a juvenile.  He points to the 1974 revisions to The Federal Youth Corrections Act, §§ 18 U.S.C. 5033, 5035, that replaced the phrase "[w]henever a juvenile is arrested" with "[w]henever a juvenile is taken into custody" as proof that federal law follows the same thesis as Tennessee law.  Nevertheless, we have encountered the specific language of these sections before, and treated custody of a juvenile as an arrest.  *United States v. Doe*, 226 F.3d 672, 679 (6th Cir. 2000) (addressing "federal custody, i.e., a federal arrest on a federal charge" (emphasis removed)).  Therefore, for purposes of interpreting the Guidelines, Curb was arrested

when he was taken into custody as a minor.  Because he was arrested once on March 15, 1997 and again on April 7, 1997, the first arrest was intervening.  We need not reach the remaining questions of section 4A1.2(a)(2).

Even pursuant to the language of Amendment 709, Curb would still qualify as a career offender under section 4B1.1.  We, therefore, do not reach the question of whether it applied to him retroactively.  Additionally, Curb does not argue that the district court erred in its interpretation of the previous language of section 4A1.2.  Accordingly, his appeal regarding his career offender status fails.

**B.      Remand in Light of *Kimbrough* and *Spears***

Curb also requests remand in light of *Kimbrough* and *Spears* because the career offender provisions incorporate, in his case, the infamous 100:1 crack-to-powder cocaine ratio.  *Kimbrough*, 552 U.S at 91, held that a district court "may consider the disparity between the Guidelines' treatment of crack and powder cocaine offenses," and conclude that for a crack-cocaine offense, "a within-Guidelines sentence is greater than necessary to serve the objectives of sentencing."  Subsequently, *Spears*, 129 S. Ct. at 843-44*,* held that "district courts are entitled to reject and vary categorically from the crack-cocaine Guidelines," even in a run-of-the-mill case.  The government objects to remand because Curb has failed to show that the district court made any procedural or substantive error in imposing the sentence.

Curb's contention that the 100:1 crack-to-powder ratio is entangled in the career offender guideline, such that categorical disagreement with the ratio may also support a district court's rejection of the career offender enhancement, has found support in this Court.  *See United States v. Michael*, 576 F.3d 323, 326-28 (6th Cir. 2009) (holding that "a district court may disagree with the 100:1 ratio as implicitly incorporated" in the career offender guideline).  On what grounds this Court may remand for resentencing in light of *Kimbrough* and *Spears*, however, is a less-settled question.

In *United States v. Johnson*, 553 F.3d 990 (6th Cir. 2009), the district court sentenced the defendant-appellant based on an amended version of the Guidelines that

adjusted downward the prior 100:1 crack-to-powder cocaine ratio. *Compare* U.S.S.G. § 2D1.1(c)(6) (2006) (applying base offense level of twenty-eight to twenty grams of cocaine base and two kilograms of cocaine) *with* U.S.S.G. § 2D1.1(c)(6) (2007) (applying base offense level of twenty-eight to thirty-five grams of cocaine base and two kilograms of cocaine). Even so, this Court in *Johnson*, 553 F.3d at 996*,* remanded for resentencing, holding that "*Spears* applies with equal force . . . under the new crack-cocaine Guidelines." *Johnson* reasoned that remand was appropriate because this Court had "no way of ascertaining [from the record below] whether the district judge would have imposed the same sentence if he had known of his discretion to vary categorically from the crack-cocaine Guidelines based on a policy disagreement." *Id*.

Subsequently, *United States v. Simmons*, 587 F.3d 348, 363-64 (6th Cir. 2009), held that an "express statement" from the district court about the policy behind the ratio is required to justify remand. "[W]hen a district court observes that the Guidelines are advisory and provides no indication that policy disagreements are not a proper basis to vary, then a sentence within the Guidelines range remains presumptively reasonable on appeal." *Id.* at 364. While this rule overlaps with the rule in *Johnson,* it promulgates a test that elides the *Johnson* court's focus on its "inability to ascertain[]," *Johnson*, 553 F.3d at 996 n.1, what the district judge would have done in light of the authority articulated in *Kimbrough* and *Spears*. Conflicts between published decisions must be resolved in favor of the earlier-decided case. *See Sowards v. Loudon Cnty., Tenn.*, 203 F.3d 426, 431 n.1 (6th Cir. 2000). *Johnson*, then, controls the standard for remand under *Kimbrough* and *Spears*; *Simmons* must be harmonized with this Court's prior ruling.

As in *Johnson*, we cannot know from the sentencing transcript whether the district court would have imposed the same sentence on Curb had it been aware of its authority to vary categorically from the career offender Guidelines based on a policy disagreement with the 100:1 crack-to-powder ratio. The district court sentencing transcript does not speak at all to that question. It shows only that the district court understood that the Guidelines were advisory. Therefore, *Johnson* compels resentencing.

Moreover, a close look at the facts in *Simmons* reveals a key difference in this case. The defendant in *Simmons* directly raised the issue of the 100:1 ratio at sentencing. Curb did not. The sentencings in both cases occurred before *Kimbrough* and *Spears* brought the 100:1 ratio clearly to the forefront of the minds of sentencing courts. However, in *Simmons*, the issue of the ratio was undeniably brought before the sentencing court's attention, and yet it chose to impose a within-Guidelines sentence without making an "express statement." The "express statement" rule from *Simmons* is predicated upon the disparity issue being brought before the sentencing court in some fashion so that it had the opportunity to consider it. Because it is not clear in this case that the sentencing court ever had such an opportunity, *Simmons* does not apply. Therefore, Johnson is the controlling authority, and resentencing is warranted.

## III. CONCLUSION

This case has languished much too long. Nevertheless, we **REVERSE** the judgment and **REMAND** this case to the district court for resentencing in light of the Supreme Court's recent decisions in *Kimbrough* and *Spears*.