*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 11a0193p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

—————————

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          *v.*

XAVIER PRIESTER,

          *Defendant-Appellant.*

No. 08-2391

—————————

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 07-00287-001—Robert J. Jonker, District Judge.

Argued: October 21, 2010

Decided and Filed: July 22, 2011

Before: BOGGS, MOORE, and KETHLEDGE, Circuit Judges.

—————————

## COUNSEL

**ARGUED:** Jonathan F. Feczko, JONES DAY, Cleveland, Ohio, for Appellant. Timothy P. VerHey, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Jonathan F. Feczko, JONES DAY, Cleveland, Ohio, David E. Mills, THE MILLS LAW OFFICE LLC, Cleveland, Ohio, for Appellant. Timothy P. VerHey, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

KETHLEDGE, J., delivered the opinion of the court, in which MOORE, J., joined. BOGGS, J. (pp. 5–7), delivered a separate dissenting opinion.

—————————

## OPINION

—————————

KETHLEDGE, Circuit Judge. In some cases we hold the district court to a standard we would dislike imposing on ourselves. This is such a case. Xavier Priester pled guilty to conspiring to distribute crack cocaine, powder cocaine, and marijuana.

1

The district court sentenced him to a within-Guidelines 180 months' imprisonment. The court's explanation as to why it chose that sentence was exemplary—with one exception. The exception is what Priester targets here. He argues, specifically, that the district court failed to recognize that it had the authority to "vary categorically" from the crack-cocaine guidelines in choosing Priester's sentence. The existence of that authority was made clear in a Supreme Court case—*Spears v. United States*, 555 U.S. 261, 265–66 (2009) (per curiam)—that was itself decided after the district court sentenced Priester. So we have the benefit of that decision, whereas the district court did not. Having parsed the sentencing transcript, we agree with Priester that the district court appeared unaware of the authority that the Supreme Court expressly announced months later. And thus—on the admittedly unfair ground of insufficient clairvoyance—we vacate Priester's sentence and remand the case for resentencing.

The facts leading up to Priester's conviction are irrelevant to this appeal, save for the fact that his case is a mine-run federal-drug one. So we cut to the sentencing hearing. We have two principal issues before us. The first is our standard of review, which depends on whether Priester argued to the district court what he argues to us now. His argument now, to use the language of *Spears*, is that the district court failed to recognize its authority "to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines." *Id.*

Our determination whether Priester made that argument to the district court does not depend on whether he used the same language that the Supreme Court later used in *Spears.* It depends instead on whether Priester conveyed the substance of what he argues now. Here is what his counsel said at the hearing:

> Likewise, Your Honor, although it's taken into account in the calculations of the sentencing guidelines, this conviction involved both—several substances, but both crack cocaine and powder cocaine. And we all have heard and *we all know about the hundred-to-one ratio*, which more or less is still applicable under the guidelines, *which we feel*, that is my client Mr. Priester and I, *is unfair* that the Court can take into consideration in fashioning a sufficient and just sentence. [Emphasis added.]

This statement adequately conveyed the substance of Priester's argument. He cites the 100:1 crack-cocaine ratio and says that the ratio is "unfair." He does not say that the ratio would merely yield an unfair *sentence* in his case—which, in essence, would be a sentence-specific argument based on the Supreme Court's decision in *Kimbrough v. United States*, 552 U.S. 85, 110 (2007) ("it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes"). Instead, Priester says that the ratio *itself* is "unfair," and that the court can take that unfairness "into consideration" in fashioning Priester's sentence. That is a decent paraphrase of the Supreme Court's later holding that a district court can categorically reject the ratio on policy grounds and then fashion a defendant's sentence accordingly. *See Spears*, 555 U.S. at 265–66.

Thus we review the district court's treatment of this argument for procedural reasonableness rather than plain error. *See United States v. Harmon*, 607 F.3d 233, 236 (6th Cir. 2010). Here is what the district court said about the 100:1 ratio:

> And although [Priester's counsel] properly points out that *the hundred-to-one ratio for crack cocaine is still largely in play in the guidelines*, as *the most recent version of the guidelines were used to calculate the drug quantity here*, *which means that* in partial deference to crack cocaine issues opened by the Supreme Court and the Sentencing Commission itself, *two points were reduced from the calculation* that would otherwise have applied properly because of the set of drugs involved here. [Emphasis added.]

The district court says two things of significance in this passage. We take them in reverse order. The court observes that the "most recent version of the guidelines"—referring to the November 2007 amendments to the Guidelines' crack provisions—resulted in a two-point reduction of Priester's base offense level. That is simply a statement of historical fact, rather than a recognition of any authority. The court's other observation—the more important one here—is that the 100:1 ratio "is still largely in play in the guidelines[.]" Notably, the court does not say that it could take the ratio out of play.

These comments go beyond mere silence as to whether the district court knew that it had the authority to reject the 100:1 ratio outright. Instead, they reflect an assumption that the court did not have that authority. The essence of *Spears*'s holding is that a district court can take the 100:1 ratio *out* of play, up front, before even determining whether the ratio yields an overlong sentence in a particular case. Here, the district court expressly stated that the ratio was in play—and then the court moved on to other issues. To say, on this record, that the court silently recognized its later-announced authority in *Spears*, but chose not to exercise that authority, would be mere fiction.

These facts put this case in a different posture from others in which we have decided the same general issue. In both *United States v. Johnson*, 553 F.3d 990 (6th Cir. 2009), and *United States v. Curb*, 625 F.3d 968 (6th Cir. 2010), the district courts had been silent as to whether they had the authority later expressly granted to them in *Spears*. We remanded for resentencing in light of *Spears*. In *United States v. Simmons*, 587 F.3d 348 (6th Cir. 2009), we affirmed the defendant's sentence on plain-error review. There, the defendant did not make a *Spears*-type argument in the district court, and the district court itself said nothing about the issue. Neither of those circumstances is present here.

Cases are better decided on reality than on fiction. The reality here is that we have no reason to think—and affirmative reason not to think—that the district court knew what was coming in *Spears*. And *Spears* is now binding precedent for this case. The lawful result, and the sensible one, is to remand the case to allow the district court to decide for itself whether *Spears* would make any difference to the sentence the court thinks appropriate in this case.

Priester's sentence is vacated, and the case remanded for proceedings consistent with this opinion.

————————————

**DISSENT**

————————————

BOGGS, Circuit Judge, dissenting. While the majority opinion acknowledges the problematic nature of reversing a district judge because of a Supreme Court decision issued after the judge ruled, (Maj. Op. at 2), that is a problem inherent in our system. What the majority opinion calls "the admittedly unfair ground of insufficient clairvoyance," *ibid.*, does occur with some frequency, and is not a basis for dissent. However, I think there is a more fundamental problem here. The perceived flaw in the district judge's conduct was *not* in following a legal principle that the Supreme Court later rejected. Instead, it was (apparently) in not realizing that he needed to articulate on the record his recognition of a power that had not been explicitly sanctioned by the Supreme Court. *See Spears v. United States*, 129 S. Ct. 840, 843-44 (2009) (per curiam). To make matters worse, this failure occurred in a context where no one clearly asked him to assert such a power.

By my reading of the record, the district judge did nothing wrong whatsoever. At page 3, the majority is willing to give the judge a pass for a reference to "the most recent version of the guidelines" because, we state, it "is simply a statement of historical fact." However, the second statement, which is fatal in the majority's view, is the statement that the one-hundred-to-one ratio "is still largely in play in the guidelines[.]" Maj. Op. at 4. But that statement, too, is simply a statement of historical fact. That ratio is "in play in the guidelines" because, in calculating the guidelines, prior to any consideration of varying, a district judge necessarily takes the ratio into account. A district judge may vary categorically, but such a calculation is, by its very terms, *outside* the guidelines. Our opinion faults the judge because he "does not say that [he] could take the ratio out of play." *Ibid.* But, in the context of the statement, the judge *cannot* take the ratio out of play and still be "in the guidelines," which is all that the judge said.

On this record, I believe our tangled case law mandates affirming. The rule we articulated in *United States v. Simmons*, 587 F.3d 348, 364 (6th Cir. 2009), is that "when

a district court observes that the Guidelines are advisory and provides no indication that policy disagreements are not a proper basis to vary, then a sentence within the Guidelines range remains presumptively reasonable on appeal." The cases in which we have reversed, *United States v. Johnson*, 553 F.3d 990 (6th Cir. 2009), and *United States v. Curb*, 625 F.3d 968 (6th Cir. 2010), are the exceptions that prove the rule. Contrary to the majority's reading, the district judge in *Johnson* made an erroneous statement that he did not have *Spears* authority.[1]  In *Curb*, the ratio was simply not before the district judge. 625 F.3d at 973 ("[S]entencing[] in [this case] occurred before [*Kimbrough v. United States*, 552 U.S. 85 (2007)] and *Spears* brought the 100:1 ratio clearly to the forefront of the minds of sentencing courts. . . .  The 'express statement' rule from *Simmons* is predicated upon the disparity issue being brought before the sentencing court in some fashion so that it had the opportunity to consider it."). Neither *Johnson* nor *Curb* fit Priester's case.

In short, in the context of our earlier cases, Priester's claim should fail. As even the majority must concede, the crack-cocaine disparity was before the judge and he recognized that the guidelines are only a starting point. The record, read fairly, is bereft of any expression as to the judge's authority to reject categorically a particular judgment or reasoning in the guidelines.

Thus, in line with our opinion in *Simmons*, I would hold that no adverse inference can be drawn from that silence, and that thus the district judge did not err. In evading *Simmons*, the majority rests on the standard of review. It is indeed puzzling that the majority draws a favorable inference from defense counsel's opaque statement that the one-hundred-to-one ratio is "unfair," treating that language as an argument for

---

[1]The district judge said, "in the Court's judgment, the Court *must* apply the guidelines as of November 1st," and we noted that this statement "suggest[ed] that, although the disparity issue was before the court, the district judge was not aware of his power to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines." 553 F.3d at 996 n.1 (emphasis in *Johnson* and internal quotation marks omitted). Because the district court was apparently not aware of his *Spears* authority, we noted that "we have no way of ascertaining whether the district judge would have imposed the same sentence if he had known of his discretion to vary categorically from the crack-cocaine Guidelines based on a policy disagreement." *Ibid.* In other words: "we know he was incorrect, but we don't know if it made a difference." I believe the majority misconstrues this "no way of ascertaining" language.

"procedural unreasonableness" and thereby avoiding the rigors of plain-error review—but at the same time gives absolutely no credit to the district court, singling out a simply correct recital of the governing law and creating an inference, unsupported by the record, that the judge was declaring himself unable to decline the categorical advice offered by the guidelines.

As is frequently true in these kinds of cases, the entire problem would have been very easy to clear up with an appropriate objection by defense counsel. Had the defense's point really been what the majority takes it to be, it would have been simple for defense counsel to say, either in his original objections as quoted in pages 2–3, or after the court's fatal language quoted at page 3 (or in response to the court's proper inquiry in accordance with *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004)): "But your honor, we want you to reject the crack guidelines in their totality, and you haven't said anything about that, and we fear you think you don't have the power to do it."

As it is, in this contest of competing inferences and implications, I believe that the district judge had the better of the conversation and committed no error. I therefore respectfully dissent.