BOGGS, Circuit Judge,
dissenting.
While the majority opinion acknowledges the problematic nature of reversing a district judge because of a Supreme Court decision issued after the judge ruled, (Maj. Op. at 951), that is a problem inherent in our system. What the majority opinion calls “the admittedly unfair ground of insufficient clairvoyance,” ibid., does occur with some frequency, and is not a basis for dissent. However, I think there is a more fundamental problem here. The perceived flaw in the district judge’s conduct was not in following a legal principle that the Supreme Court later rejected. Instead, it was (apparently) in not realizing that he needed to articulate on the record his recognition of a power that had not been explicitly sanctioned by the Supreme Court. See Spears v. United States, 555 U.S. 261, 129 S.Ct. 840, 843-44, 172 L.Ed.2d 596 (2009) (per curiam). To make matters worse, this failure occurred in a context where no one clearly asked him to assert such a power.
By my reading of the record, the district judge did nothing wrong whatsoever. At page 951-52, the majority is willing to give the judge a pass for a reference to “the most recent version of the guidelines” because, we state, it “is simply a statement of historical fact.” However, the second statement, which is fatal in the majority’s view, is the statement that the one-hundred-to-one ratio “is still largely in play in the guidelines!)]” Maj. Op. at 952. But that statement, too, is simply a statement of historical fact. That ratio is “in play in the guidelines” because, in calculating the guidelines, prior to any consideration of varying, a district judge necessarily takes the ratio into account. A district judge may vary categorically, but such a calculation is, by its very terms, outside the guidelines. Our opinion faults the judge because he “does not say that [he] could take the ratio out of play.” Ibid. But, in the context of the statement, the judge cannot take the ratio out of play and still be “in the guidelines,” which is all that the judge said.
On this record, I believe. our tangled case law mandates affirming. The rule we articulated in United States v. Simmons, 587 F.3d 348, 364 (6th Cir.2009), is that “when a district court observes that the Guidelines are advisory and provides no indication that policy disagreements are not a proper basis to vary, then a sentence within the Guidelines range remains presumptively reasonable on appeal.” The cases in which we have reversed, United States v. Johnson, 553 F.3d 990 (6th Cir.2009), and United States v. Curb, 625 F.3d 968 (6th Cir.2010), are the exceptions that prove the rule. Contrary to the majority’s reading, the district judge in Johnson made an erroneous statement that he did not have Spears authority.[1] In Curb, the *954 ratio was simply not before the district judge. 625 F.3d at 973 (“[S]enteneing[ ] in [this case] occurred before [Kimbrough v. United States, 552 U.S. 85, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007)] and Spears brought the 100:1 ratio clearly to the forefront of the minds of sentencing courts.... The ‘express statement’ rule from Simmons is predicated upon the disparity issue being brought before the sentencing court in some fashion so that it had the opportunity to consider it.”). Neither Johnson nor Curb fit Priester’s case.
In short, in the context of our earlier cases, Priester’s claim should fail. As even the majority must concede, the crack-cocaine disparity was before the judge and he recognized that the guidelines are only a starting point. The record, read fairly, is bereft of any expression as to the judge’s authority to reject categorically a particular judgment or reasoning in the guidelines.
Thus, in line with our opinion in Simmons, I would hold that no adverse inference can be drawn from that silence, and that thus the district judge did not err. In evading Simmons, the majority rests on the standard of review. It is indeed puzzling that the majority draws a favorable inference from defense counsel’s opaque statement that the one-hundred-to-one ratio is “unfair,” treating that language as an argument for “procedural unreasonableness” and thereby avoiding the rigors of plain-error review — but at the same time gives absolutely no credit to the district court, singling out a simply correct recital of the governing law and creating an inference, unsupported by the record, that the judge was declaring himself unable to decline the categorical advice offered by the guidelines.
As is frequently true in these kinds of cases, the entire problem would have been very easy to clear up with an appropriate objection by defense counsel. Had the defense’s point really been what the majority takes it to be, it would have been simple for defense counsel to say, either in his original objections as quoted in pages 951-52, or after the court’s fatal language quoted at page 951-52 (or in response to the court’s proper inquiry in accordance with United States v. Bostic, 371 F.3d 865 (6th Cir.2004)): “But your honor, we want you to reject the crack guidelines in their totality, and you haven’t said anything about that, and we fear you think you don’t have the power to do it.”
As it is, in this contest of competing inferences and implications, I believe that the district judge had the better of the conversation and committed no error. I therefore respectfully dissent.

. The district judge said, "in the Court’s judgment, the Court must apply the guidelines as of November 1st,” and we noted that this statement "suggested] that, although the dis *954 parity issue was before the court, the district judge was not aware of his power to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines.” 553 F.3d at 996 n. 1 (emphasis in Johnson and internal quotation marks omitted). Because the district court was apparently not aware of his Spears authority, we noted that "we have no way of ascertaining whether the district judge would have imposed the same sentence if he had known of his discretion to vary categorically from the crack-cocaine Guidelines based on a policy disagreement.” Ibid. In other words: "we know he was incorrect, but we don’t know if it made a difference.” I believe the majority misconstrues this "no way of ascertaining” language.