NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1217n.06

No. 11-2612

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Nov 26, 2012*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff - Appellee | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | WESTERN DISTRICT OF MICHIGAN |
| XAVIER ALEXANDER PRIESTER | ) | |
| | ) | |
| Defendant - Appellant | ) | |

Before:  DAUGHTREY, COLE, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.**  Xavier Priester appeals his sentence, arguing that the district court erroneously found that he served substantial sentences on two prior criminal offenses, resulting in a higher sentencing range under the U.S. Sentencing Guidelines ("Guidelines") than he would otherwise have received.   Priester has also filed a motion to remand this case for re-sentencing and a motion to supplement the record on appeal.  We grant the motion to remand and deny as moot the motion to supplement the record.  Accordingly, we vacate Priester's sentence and remand for re-sentencing so the district court can assess, in the first instance, the accuracy of the representations the parties have made about the time Priester spent in jail as a result of his March 14, 2005, state-court criminal adjudication.

-1-

**I.**

**A.**

Priester pled guilty to conspiring to distribute crack cocaine, powder cocaine, and marijuana in 2008 and received a sentence of 180 months' imprisonment. On his first appeal, we vacated and remanded for re-sentencing in light of *Spears v. United States*, 555 U.S. 261 (2009). *See United States v. Priester*, 646 F.3d 950, 953 (6th Cir. 2011).

The pre-sentence report ("PSR") prepared for Priester noted that he had been arrested for marijuana possession and driving with a suspended license on March 14, 2005, in Washtenaw County, Michigan. The PSR described the adjudication of the offense as follows:

> 9-30-05/ Ct. 1, 12 months probation, 180 days jail, suspended, $1,195 fine; Ct. 2, 90 days jail, suspended, $645 fine
> 03-01-06/ 180 days jail, release on payment of $1,840 fine, unsuccessful probation discharge
>
> Washtenaw County Jail, Ann Arbor, Michigan, records reflect Mr. Priester was released from custody on July 23, 2006.

Because the PSR found that Priester spent more than sixty days in jail for this offense, it assessed two criminal history points to Priester, as mandated by the 2008 version of the Guidelines. U.S. Sentencing Guidelines Manual § 4A1.1(b) (2008). In addition, since Priester committed the conspiracy offense for which he was being sentenced in federal court "less than two years after release from imprisonment on a sentence counted under" § 4A1.1(b), this offense triggered the Guidelines' "recency" provision. *Id.* § 4A1.1(e). Accordingly, the PSR assessed two additional criminal history points to Priester for this offense, for a total of four points related to this offense.

Priester objected to the PSR's scoring of this offense. He agreed that the sentence he received on September 30, 2005, was accurately stated by the PSR and admitted that he had been

arrested on a bench warrant in February 2006 for violating his probation terms and imprisoned for a few days. But he argued that he paid his $1,840 fine on March 1, 2006, in lieu of serving out the jail sentence and "did not serve [the 180-day] term that was imposed." Priester relied upon the county's Misdemeanor Register of Actions ("Register") to prove his assertion, which he submitted as an exhibit to his sentencing memorandum. The Register includes the following note on Priester's sentence, dated March 1: "Serve 180D Jail/Credit 5D/Bal 175D to serve Release on payment of $1,840" on March 1. The entry immediately below it, also dated March 1, indicates Priester paid the fine: "pd 1840 bal 0." Priester contends that this offense should have been scored under § 4A1.1(c), rather than § 4A1.1(b), because he paid a fine as an alternative to serving out the full term of imprisonment. U.S. Sentencing Guidelines Manual § 4A.2, cmt. 4 (2008) ("A sentence which specifies a fine or other non-incarcerative disposition as an alternative to a term of imprisonment . . . is treated as a non-imprisonment sentence."). This would lead to one criminal history point being assessed against Priester related to this offense, instead of four, since subsection (c) prior offenses merit only one criminal history point and do not trigger additional points for "recency" under § 4A1.1(e). Scoring the offense in the manner Priester proposes would have significantly reduced his Guidelines sentencing range.

The government argued at the re-sentencing hearing that Priester's interpretation of the Register was erroneous. It asserted that the fine was an additional requirement for Priester's release, rather than an alternative sentence, and that he actually served a jail term longer than sixty days after violating probation. The district judge agreed and made the following ruling from the bench on the dispute:

Paragraph 64, as I indicated, does show that the 180 days of jail that was imposed initially I think sometime in 2005 was suspended. That's clear on the face of the document. But when you read in later in what the presentence report indicates it's that the 180 days was later imposed because of a probation violation with credit for five days' time served and the remaining 175 then to be served. And that's an entry from March 1 of 2006.

The argument from defense here, I think, is that the Court should treat this as an alternative sentence and treat it as a noncustodial sentence because the document says that release could happen upon payment of $1,840 for the costs and fines.

I don't think that's really what an alternative sentence is . . . . It certainly was not imposed as an alternative sentence . . . . Rather it was imposed ultimately based on the probation violation as the jail term. In fact, five days had already been served and credited with 175 to go, and it's simply a future condition of release, not imposed in my view as an alternative sentence from the inception as we sometimes see. So it seems to me that the two points there are appropriately scored even if there was a later release that occurred before the full 180 days had been served.

Priester also objected to the scoring of an October 6, 2001, arrest in Oakland County for driving with a suspended license. The PSR states that Priester served thirty-one days in jail for this offense and assessed him one criminal history point, but Priester maintains that the court suspended his sentence. The first page of the Register for this offense notes that Priester received a thirty-one-day jail sentence. But on the January 28, 2002 entry reflecting the minutes of Priester's sentencing, the phrase "jail term suspended" appears immediately below the listing for a "jail term" of thirty-one days. The district judge agreed with the government that Priester actually served thirty-one days in jail for this offense:

[M]y reading of the documents . . . is that the 31 days was actually imposed and was not judicially suspended. Certainly that's what the [first] page of even the Register of Actions indicates where in the middle of the page it says, "Jail sentence, 31 days," and there's no indication of suspension at all. As in contrast, for example, to the paragraph 64 papers, which we'll look at in a minute, there's an asterisk right on the face page indicating that the jail time was suspended. At least initially. But 61 there's no such indication. And when you look into that January 28, '02, entry where the jail term is noted, it's 31 days. There's then what I would interpret as a field for

jail term suspended which would either have to be indicated yes with an X or something like that and it isn't. So I don't think the fairest reading of this paper is that the sentence was suspended even in the view of whoever prepared the Register of Actions.

Based on Priester's category IV criminal history and offense level of thirty-five, the district judge calculated a sentencing range of 151 to 188 months' imprisonment. Because Priester offered substantial assistance to the government, the district judge adjusted his sentencing range downward pursuant to § 5K1.1 of the Guidelines, resulting in a final range of 110 to 137 months' imprisonment. The district judge sentenced Priester to 117 months' imprisonment. This timely appeal followed.

**B.**

Priester's principal brief on appeal addressed his issue with the scoring of his March 14, 2005 prior offense, but not his October 6, 2001 prior offense. In his reply brief on appeal, Priester submitted the Washtenaw County jail records upon which the probation department supposedly relied in calculating the criminal history points on his March 14, 2005 offense. These records show that authorities brought Priester to the jail on February 27, 2006 at 4:30 p.m., but released him on March 1, 2006 at 6:47 p.m. A code on the records explains that the jail released Priester because he "POSTEDBOND." The July 23, 2006, date included in the PSR as Priester's release date is never mentioned in these records, and they do not indicate that he spent more than a handful of days in the Washtenaw County jail on *any* prior offense. Priester also challenged the scoring of his October 6, 2001, offense in his reply brief by submitting an e-mail from the Oakland County Sheriff's Office Records Bureau. The e-mail states that the Oakland County jail did not have any record of Priester being a prisoner in their facilities. This undercuts the assertion in the PSR that Priester spent thirty-one days in jail on the October 6, 2001 incident.

After the completion of briefing, Priester filed a motion to remand this case for re-sentencing and a motion to expand the record on appeal in light of the contents of these records, both of which are pending. Priester also moved to expand the record in the district court, but the district judge denied the motion without prejudice, reasoning that this court is "in the best position to evaluate whether to supplement the record, remand for further consideration, or proceed with a plain error standard of review . . . ."

## II.

### A.

We address issues raised by Priester's March 14, 2005, arrest for marijuana possession and driving with a suspended license first. The scoring of this prior offense was the original subject of this appeal, but Priester did not submit the Washtenaw County jail records that are now at issue until he filed his reply brief. The government asserts that these records are "new evidence" and that we should review Priester's sentence without considering them. Generally, arguments not raised in an appellant's opening brief are considered abandoned. *Youghiogheny & Ohio Coal Co. v. Milliken*, 200 F.3d 942, 955 (6th Cir. 1999). Nonetheless, this rule "is prudential and not jurisdictional." *Id.* "Deviations are permitted in 'exceptional cases or particular circumstances,' or when the rule would produce a 'plain miscarriage of justice.'" *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1461 (6th Cir. 1988) (quoting *Hormel v. Helvering*, 312 U.S. 552, 558 (1941)).

Overlooking Priester's failure to produce the jail records until this stage of the case is warranted. In the district court, the government relied upon the PSR's assertions about the Washtenaw County jail records to argue for a higher sentencing range for Priester. While the government asserts in its response to the motion to remand that the records Priester submitted do not

-6-

prove conclusively that he is correct, it does not dispute that the records are genuine and offers no explanation as to how the PSR reached its conclusions about the time Priester spent in jail. Moreover, while Priester did not introduce the actual jail records until a very late stage of litigation, he raised the substance of his objection to the criminal history scoring of this offense in both the district court and in his opening brief on appeal. To guard against a potential miscarriage of justice, we will give full consideration to Priester's claim. *See United States v. Alaniz*, 75 F. App'x 344, 352–53 (6th Cir. 2003) (vacating sentence and remanding case after prison records discovered by defendant's appellate counsel demonstrated PSR's representations about a prior conviction were not accurate under "plain error" review).

The government raised concerns in its response to the motion to remand that Federal Rule of Criminal Procedure 35(a) precluded review of the Washtenaw County jail records. It may be correct that Rule 35(a) would have prohibited the district court from reconsidering Priester's sentence on these grounds, although that is an issue we need not decide today. *See* Fed. R. Crim. P. 35 (Notes to 1991 Amendments) (acknowledging that Rule 35(a) "recognize[s] explicitly the ability of the *sentencing court* to correct a sentence," but that such ability is "very narrow") (emphasis added); *United States v. Dotz*, 455 F.3d 644, 646 (6th Cir. 2006) ("Rule 35(a) . . . allows the district court to correct arithmetical, technical, or other clear sentencing errors."). But Rule 35(a) does not prevent *this* court from considering issues raised by Priester's jail records. That is not to say there are no limits on such consideration; assignments of error not presented to the district court are only reviewed for plain error. Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."); *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006) (recognizing that only obvious errors that affect a defendant's

-7-

substantial rights and adversely impact the integrity of judicial proceedings may be corrected under "plain error" review). But "plain error" has been found in cases similar to this one. *See, e.g.*, *Alaniz*, 75 F. App'x at 352–53. Accordingly, we find that Priester's failure to raise this issue in a Rule 35(a) motion does not preclude our consideration of it.

**B.**

During sentencing, the district court "must—for any disputed portion of the pre-sentence report . . . rule on the dispute or determine that a ruling is unnecessary . . . ." Fed. R. Crim. P. 32(i)(3)(B). We have held that this rule is not satisfied when a district judge relies upon a PSR's factual contentions after being asked to resolve a dispute regarding those contentions. *United States v. Tarwater*, 308 F.3d 494, 518 (6th Cir. 2002) ("Because the purpose of the rule is to ensure that sentencing is based on reliable facts found by the court itself after deliberation, a court may not merely summarily adopt the factual findings in the presentence report or simply declare that the facts are supported by a preponderance of the evidence.").

For instance, in *United States v. Darwich*, 337 F.3d 645 (6th Cir. 2003), the district court failed to "make specific factual findings" on a leadership enhancement recommended by a PSR, even after the defendant objected to the PSR's factual assertions buttressing the enhancement. 337 F.3d at 666. We found that the district court's "exclusive reliance on the PSR . . . cannot be considered a ruling" on disputed facts in a PSR. *Id.* at 667. To correct the oversight, we remanded to the district court to "issue a ruling" on the contested factual issues and determine whether the enhancement was actually applicable. *Id.*; *see also United States v. Corrado*, 227 F.3d 528, 540–41 (6th Cir. 2000) (remanding for re-sentencing after the district court "did not set out findings" as to leadership enhancements after defendants "objected to several findings in the presentence report"); *United*

*States v. Tackett*, 113 F.3d 603, 613–14 (6th Cir. 1997) (remanding for re-sentencing after the "district court made no independent findings regarding the basis for the obstruction of justice enhancement," including the "hotly contested factual question of how much wasted time and effort defendants' conduct had caused").

The gravamen of Priester's objection to the scoring of his March 14, 2005, offense is that the district judge did not resolve the dispute over the facts stated in his PSR. The burden was on the government to prove the facts supporting the additional criminal history points. *See Darwich*, 337 F.3d at 665. Nonetheless, the district judge appeared to presume that Priester served the full prison sentence. Actual resolution of the objection would have required examination of the underlying jail records mentioned in the PSR to see which party's assertions about the nature of Priester's setence are correct. Accordingly, we must vacate Priester's sentence and remand this case so the district court can resolve, in the first instance, whether the underlying facts of the adjudication of his March 14, 2005, offense actually justify the three additional criminal history points he received. On remand, the district court should consider all evidence relevant to this issue, including the jail records. We anticipate that if the district judge finds that a new base sentencing range is appropriate, he will nonetheless continue to apply an adjustment to that range reflecting Priester's "substantial assistance" to the government commensurate with the one applied during Priester's first re-sentencing.

## III.

Priester also asks for reconsideration of the scoring of his October 6, 2001, offense on remand. We find the failure to raise this issue distinguishable from his arguments regarding the March 14, 2005, offense in at least four ways. First, Priester did not even mention the scoring of this

offense in his opening brief. Second, the district judge did engage in the necessary factual inquiry with respect to this offense by examining the evidence submitted and explaining why he believed the sentence was actually imposed. Third, the e-mail Priester submitted to prove he did not spend time in the Oakland County jail is not necessarily inconsistent with the district judge's finding. Unlike the Washtenaw County jail records, which show the times and dates on which Priester was brought into and released from custody, the e-mail merely states that the jail had "no record of this incarceration" and suggested that Priester's counsel "check with the court of record" to pursue the matter further. Fourth, there appears to be no error in the scoring of this offense. Priester received a suspended sentence, probation, and community service from the state court after entering his guilty plea, which qualifies as a "prior sentence" under § 4A1.1(c) of the Guidelines. A term of imprisonment is not required. While not all misdemeanor convictions are scored, "[d]riving without a license or with a revoked or suspended license" is, regardless of the sentence imposed, if committed within ten years of the offense for which the defendant is being sentenced. U.S. Sentencing Guidelines Manual §§ 4A1.2(c)(1) & 4A1.2(e)(2) (2008). The amount of time Priester spent incarcerated on this offense is therefore irrelevant, and we see no reason to overlook Priester's failure to mention this issue at all in his opening brief. *See Youghiogheny*, 200 F.3d at 955. This argument is waived.

## IV.

The motion to vacate is granted, and the motion to expand the appellate record is denied as moot. Accordingly, we vacate Priester's sentence and remand for further proceedings consistent with this opinion.